```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
CECILIO GARCIA,

                    Plaintiff,
                                                    **MEMORANDUM AND ORDER**
         -against-                                  Case No. CV-00-4865 (FB)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------------------------------x
```

*Appearances:*
*For the Plaintiff:*          *For the Defendant:*
CHARLES E. BINDER, ESQ.       ROSLYNN R. MAUSKOPF, ESQ.
Binder and Binder             United States Attorney
215 Park Avenue South, 6th Floor   Eastern District of New York
New York, New York 10003      By: TIMOTHY D. LYNCH, ESQ.
                              Assistant United States Attorney
                              One Pierrepont Plaza, 14th floor
                              Brooklyn, New York 11201

**BLOCK, Senior District Judge:**

Plaintiff Cecilio Garcia ("Garcia") seeks review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for disability insurance benefits ("DIB"). The Commissioner moves for an order remanding for further proceedings; Garcia moves for an order remanding solely for a calculation of benefits. For the following reasons, the Commissioner's motion is denied and Garcia's motion is granted.

I.

On August 21, 1990, Garcia sustained serious injuries while working at his demolition job. He applied for DIB on January 21, 1997, alleging that he had been disabled

since August 21, 1991, due to anxiety, depression, tension, nervousness, tiredness, headaches, backaches, and injuries to his back, head, and legs. After his application was denied, he requested a hearing before an administrative law judge ("ALJ"), which was held on January 13, 1998. The ALJ subsequently rendered an unfavorable decision. After the Commissioner's Appeals Council denied Garcia's request to review the ALJ's decision, he sought review in this Court; by order dated March 26, 2001, the Court, pursuant to a stipulation entered into by the parties, remanded the case to the Commissioner for further proceedings (1) to consider new evidence that Garcia had submitted to the Appeals Council, (2) to consider statements made by Garcia's treating physicians, and (3) to obtain the testimony of medical and vocational experts. *See* Docket Entry # 3 (Order). On remand, supplemental hearings were held before the same ALJ on August 13, 2003 and March 2, 2004.

With respect to his mental impairments, Garcia submitted evidence from psychiatrist Dr. Luis R. Locuratolo, who treated him between 1991 and 1997. Dr. Locuratolo reported that Garcia displayed poor memory, appetite disturbance, sleep disturbance, mood disturbance, emotional liability, psychomotor retardation, anhedonia, feelings of guilt and worthlessness, difficulty thinking or concentrating, social withdrawal, decreased energy, intrusive thoughts and generalized persistent anxiety, *see* A.R. at 483; he further opined that those symptoms had resulted in marked limitations in the areas of "understanding and memory," "sustained concentration and persistence," "social

interactions" and "adaption." *Id.* at 485.[1] Over the course of his treatment, Dr. Locuratolo prescribed various antidepressants.

The ALJ called Dr. Locuratolo to testify in person. At the August 13, 2003 hearing, Dr. Locuratolo admitted, "I accept what the patient says, you know. . . . I don't write the proper mental status [report]. . . . I know he's depressed because I can't tell what he's taking about. I don't need to do this kind of test . . . . I [just] talk with him about different things." A.R. at 762-64.

Garcia also offered the opinions of two experts who examined him at his attorney's request. First, psychologist Mildred Antonelli, Ph.D., reported confusion, severe memory problems, lack of concentration, nervousness, social withdrawal and disturbing thoughts; she also noted that he could not "repeat three digits forward and could not comprehend the request when he was asked to add two one-digit numbers," A.R. at 668; she further opined that Garcia suffered from retrograde and anterograde amnesia. *See id.* Like Dr. Locuratolo, Dr. Antonelli concluded that Garcia was markedly limited in the areas of understanding and memory, sustained concentration and persistence, social interactions and adaption. *See id.*

Second, Dr. Robert L. Goldstein, a psychiatrist, performed a "comprehensive psychiatric examination, which comprise[d] an anamnesis [i.e., a detailed in-depth psychiatric history] and a mental status examination." A.R. at 653. He reported that Garcia was "socially isolated and withdrawn," had "passive suicidal ideation," and suffered from

---

[1]"A.R." refers to the administrative record.

3

poor sleep, poor appetite, impaired concentration and memory, "feelings of hopelessness" and "feelings of worthlessness," *id.* at 654-55; he further observed that Garcia exhibited "signs of psychomotor retardation" and "a very low energy level." *Id.* at 655. Dr. Goldstein concluded that Garcia's "functioning has deteriorated in all areas, e.g. occupational, social, sexual, etc.," and assigned a Global Assessment of Functioning ("GAF") score of 45, *id.* at 656; a GAF score of 50 or lower suggests a "serious impairment" in the level of functioning. *See Wright v. Barnhart*, 2006 WL 4049579, *9 (D. Conn. 2006) (citing http://psyweb.com/Mdisord/DSM_IV/jsp). He further opined that Garcia had been disabled since the date of his accident. *See* A.R. at 662.

At the March 2, 2004 hearing, the ALJ elicited testimony from the Commissioner's medical expert, Dr. Leslie Fine. Dr. Fine did not affirmatively opine on Garcia's mental condition, stating only that he couldn't "say from the record" that Garcia met the Commissioner's criteria for *per se* disabling depression, A.R. at 90; instead, he offered critiques of the evidence supporting Garcia's claim. With respect to Dr. Locuratolo, he stated that the doses of antidepressants that he prescribed were "inadequate . . . to treat the severe impairment and symptoms that [he] described." *Id.* at 86. With respect to Dr. Antonelli, he stated:

> I think any time you believe that [someone suffers from retrograde and anterograde amnesia,] I think you're compelled to get formal neuropsychological testing to find out the details of this. I mean, [if] he can't remember most of the recent and remote events of his life, then he's suffering from a severe and pronounced dementia and I think formal testing would have been in order.

A.R. at 94. Finally, with respect to Dr. Goldstein, he stated:

4

> He indicates that concentration and memory are impaired but he gives no clinical examples of how he arrived at that conclusion. Usually in a mental status exam, you'd indicate, he can remember several items for five minutes, he can spell a word backwards, he can do serial sevens, or very simple clinical tests which indicated that the Claimant's memory or concentration is impaired. He doesn't indicate that. He only indicates his conclusion so I have no basis to know ... what he based it on.

A.R. at 88-89.

In a decision dated March 12, 2004, the ALJ found that Garcia was last insured for DIB on September 30, 1995; applying the requisite five-step process, *see Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (citing 20 C.F.R. §§ 404.1520(b-f), 416.920(b-f)), he then found (1) that Garcia had "not engaged in substantial gainful activity since the alleged onset date of disability," A.R. at 16, (2) that he suffered from "low back pain, diabetes, and depression," which "are 'severe' within the meaning of the Regulations," *id.*, but (3) that his impairments did not meet or equal the criteria for any impairment or combination of impairments considered *per se* disabling under the Commissioner's Listing of Impairments. At step four, the ALJ found that, despite his impairments, Garcia retained the residual functional capacity ("RFC") to perform "a full range of light work," *id.*; applying that RFC, the ALJ found (4) that Garcia was "unable to perform any of his past [ ] work" as a construction worker, factory worker, or restaurant worker, but (5) that the Medical Vocational Grids nonetheless required a finding of "not disabled." *Id.*

In making these findings, the ALJ rejected Dr. Loculatolo's opinion as "completely without merit." A.R. at 11. In this regard, the ALJ noted that "Dr. Locuratolo's

5

treatment notes contain virtually no evidence concerning examination results, clinical findings, mode of treatment or the results thereof," that "he relies exclusively on [his patients'] subjective complaints [and] not objective medical evidence," and that "he provided the claimant with minimal or below therapeutic levels of medication." *Id.*

The ALJ also rejected the opinions of Drs. Antonelli and Goldstein:

> As for Dr. Goldstein's report, it consisted primarily of a recitation of the claimant's complaints and little in the way of objective findings. As for Dr. Antontelli's report, it is based exclusively on the claimant's self description of his difficulties. She performed no mental status examination at all, declining to perform a neuro-psychological examination even though she appears to have uncovered evidence that the claimant was suffering from dementia.

*Id.* at 14. The ALJ concluded that neither Dr. Antonelli nor Dr. Goldstein had "provided any truly valid evidence to support the opinions of [Dr. Locuratolo] or . . . the proposition that the claimant is disabled." *Id.*

Garcia sought review with the Appeals Council, arguing, in part, that the ALJ should have found that his mental impairments met the criteria for a *per se* disability. In support of that argument, he presented new opinions from (1) Dr. Mara Florentino, a psychiatrist who had begun treating Garcia in 2003, and (2) Dr. Azariah Eshkenazi, a psychiatrist who had examined Garcia at his attorney's request in 2005. Dr. Florentino diagnosed "schizoaffective disorder, depressed type," A.R. at 723, while Dr. Eshkenazi diagnosed "major depression with symptoms of psychosis." *Id.* at 688. Both doctors reported numerous symptoms of severe depression and, like Drs. Antonelli and Goldstein, opined that those symptoms caused marked limitations in all areas of functioning. Dr.

6

Florentino further opined that Garcia's symptoms and limitations dated from 1993; Dr. Eshkenazi opined that they dated from 1990.

Garcia also submitted to the Appeals Council a letter from Dr. Goldstein vigorously defending his opinion:

> Unlike many other areas of clinical medicine . . . , psychiatry has no external validating criteria, no biological markers, or laboratory tests, to confirm or refute diagnostic impressions. Consequently, in most cases the diagnosis is wholly a product of the clinical skills and knowledge of the individual psychiatrist and can never be better than the judgment made by individual clinicians based on their examination of the patient.
>
> * * *
>
> Appropriate observations and inquiries were undertaken in each and every one of [the] major clinical areas during the course of my mental status examination of Mr. Garcia and were noted in my report. When combined with the information I obtained from the psychiatric history, these specific mental status findings enabled me to reach a specific set of psychiatric diagnoses in the case.
>
> * * *
>
> Dr. Fine testified in a conclusory fashion that my report did not set forth a valid mental status examination. It is inconceivable that any qualified and competent psychiatrist could, in good faith, reach such an insupportable conclusion.
>
> * * *
>
> [I]n the case of Cecelio Garcia, in my profession opinion (to a reasonable degree of psychiatric certainty), my methodology in conducting a mental status examination met the very highest standards of good psychiatric practice and conformed to the generally accepted format for such an examination.

A.R. at 699-703.

The Appeals Council considered the opinions of Drs. Florentino and Eshkenazi, as well as Dr. Goldstein's letter, but concluded that the new evidence "[did] not establish that the claimant was disabled before his date last insured, September 30, 1995, and, therefore, does [not] change the Administrative Law Judge's findings or conclusions." *Id.* at 675. The Appeals Council declined to review the ALJ's decision, thereby rendering final the Commissioner's decision to deny benefits. This action followed.

## II.

The Commissioner concedes that the ALJ erred by failing (1) to develop the record by seeking evidence regarding Garcia's mental impairments for a two-year period when Garcia lived in the Dominican Republic, (2) to identify the evidence supporting his conclusion that Garcia's RFC allowed him to perform a full range of light work, and (3) to address the effect of mental impairments on Garcia's RFC. Based on these errors, the Commissioner asks the Court to further prolong Garcia's 10-year odyssey by once again remanding for further proceedings. *See Pratts v. Chater*, 94 F.3d 34, 39 (2d Cir. 1996) ("Where there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded . . . for further development of the evidence." (citation and internal quotation marks omitted)).

Garcia, by contrast, argues that the case should be remanded solely for a calculation of benefits because, apart from the conceded errors, the ALJ erred by finding that his severe mental impairments did not meet the criteria for the *per se* disability set forth in Listing 12.04. The Court agrees.

Listing 12.04 deals with affective disorders such as depression; a claimant

8

suffering from depression must establish at least four of the following symptoms:

> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or
>
> i. Hallucinations, delusions or paranoid thinking[.]

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04. In addition, the claimant must establish that the depression results in at least two of the following:

> 1. Marked restriction of activities of daily living; or
>
> 2. Marked difficulties in maintaining social functioning; or
>
> 3. Deficiencies of concentration, persistence or pace resulting in frequent failure to complete tasks in a timely manner (in work settings or elsewhere); or
>
> 4. Repeated episodes of deterioration or decompensation in work or work-like settings which cause the individual to withdraw from that situation or to experience exacerbation of signs and symptoms (which may include deterioration of adaptive behaviors).

*Id.*

Garcia argues that the ALJ was bound to accept Dr. Loculatolo's opinion that he satisfied the criteria for Listing 12.04; however, a treating physician's opinion as to the

nature and severity of a claimant's impairments are entitled to controlling weight only "if it is well supported by medical findings and not inconsistent with other substantial record evidence." *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000). Given Dr. Loculatolo's admissions at the March 13, 2003 hearing, as well as Dr. Fine's testimony that the dosages of antidepressants Dr. Locuratolo prescribed were inconsistent with the severity of his diagnosis, the ALJ was within his rights to reject Dr. Locuratolo's opinion.

The same cannot be said of the ALJ's rejection of the opinions of Drs. Antonelli and Goldstein. Because they did not treat Garcia, their opinions were not entitled to any particular weight; nevertheless, the ALJ was required to explain his reasoning. *See* 20 C.F.R. § 404.1527(f)(ii) ("Unless the treating source's opinion is given controlling weight, the [ALJ] must explain in the decision the weight given to . . . any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us."). Lest this requirement become a meaningless formality, courts have held that "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003); *see also Bayliss v. Barnhart*, 427 F. 3d 1211, 1216 (9th Cir. 2005) ("To reject an uncontradicted opinion of a treating *or examining* doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence." (emphasis added)).

The ALJ's reasons for rejecting Dr. Antonelli's and Dr. Goldstein's opinions are unpersuasive. That Dr. Antonelli did not explore the possibility that Garcia suffered from dementia does not detract from her conclusion that Garcia's severe depression imposed marked limitations in all areas of functioning. Moreover, contrary to the ALJ's

conclusion, she did perform a mental status examination; indeed, she performed some of the very same tests suggested by Dr. Fine in his critique of Dr. Goldstein.

Similarly, there was no basis for the ALJ to conclude that Dr. Goldstein's opinion was methodologically flawed. Even assuming he did not subject Garcia to tests similar to Dr. Antonelli's, his opinion was based on his personal observations and a detailed psychiatric history. As another district court recently noted, such techniques are well-recognized in the mental-health field:

> The accepted clinical technique for diagnosing a mental impairment is to assess the existence and severity of symptoms and signed identified by the American Psychiatric Association in the Diagnostic and Statistical Manual of Mental Disorders. This assessment is usually based on a patient's subjective reports and the [psychiatrist's] own observations. The regulations specify that a psychiatric opinion may rest either on observed signs and symptoms or on psychological tests.

*Huskey v. Astrue*, 2007 WL 2042504, at *6 (D. Kan. Jul. 5, 2007).

Since there is no valid basis in the record for rejecting the opinions of Drs. Antonelli and Goldstein, the ALJ's finding that Garcia did not satisfy the criteria of Listing 12.04 is not supported by substantial evidence.[2] The ALJ's error is confirmed by the additional evidence Garcia submitted to the Appeals Council. While the Court obviously cannot fault the ALJ for failing to consider evidence not before him, the Appeals Council

---

[2] At oral argument, the Commissioner argued that the opinion of Dr. J.F. Kalangie that "emotional factors [did not] contribute to the severity of [Garcia's] symptoms and functional limitations," A.R. at 377, supported the ALJ's step-three finding. Dr. Kalangie, however, treated Garcia only for his physical injuries; as such, his opinion can be read only to mean that emotional factors did not exacerbate the symptoms and limitations of those injuries. Dr. Kalangie was simply not asked to opine on Garcia's mental impairments.

11

had a separate obligation to consider the evidence; as the Second Circuit has recognized:

> Social Security regulations expressly authorize a claimant to submit new and material evidence to the Appeals Council when requesting review of an ALJ's decision. . . . If the new evidence related to a period before the ALJ's decision, the Appeals Council "shall evaluate the entire record including the new and material evidence submitted ... [and] then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record."

*Perez v. Chater*, 77 F.3d 41, 44 (2d Cir. 1996) (quoting 20 C.F.R. § 404.970(b)). The Appeals Council's perceived boilerplate rejection of Garcia's new evidence is ambiguous; it can be construed as meaning either that the evidence was insufficient on its merits to establish that Garcia was disabled, or that the evidence was irrelevant because it was based on examinations done after Garcia's insured status had expired. In either case, the Appeals Council's logic is unpersuasive: Both Dr. Florentino and Dr. Eshkanezi specifically opined that Garcia met the criteria of Listing 12.04, and that his symptoms and limitations had existed since well before his date last insured; the Second Circuit long ago established that such retrospective opinions are valid. *See Dousewicz v. Harris*, 646 F.2d 771, 774 (2d Cir. 1981) ("[A] diagnosis of a claimant's condition may properly be made even several years after the actual onset of the impairment." (quoting *Stark v. Weinberger*, 497 F.2d 1092, 1097 (7th Cir. 1974)).

With respect to Dr. Goldstein's letter, the Appeals Council's ambiguous reasoning is a *non sequitur*: While it is perhaps true that Dr. Goldstein's defense of his methodology did not, standing alone, establish that Garcia was disabled, it does not follow that his forceful response to Dr. Fine's critique of his earlier opinion would have had no

12

impact on the ALJ's decision.

Having determined that the ALJ's step-three finding was not supported by substantial evidence, the Court "must consider the underlying record to determine whether the remand should be for further administrative proceedings or the calculation of benefits." *Schaal v. Callahan*, 993 F. Supp. 85, 96 (D. Conn. 1997). Remand for further proceedings is appropriate "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard," *Pratts*, 94 F.3d at, 39; remand for calculation of benefits is appropriate "when the record provides persuasive proof of disability" and a remand for further proceedings "would serve no purpose." *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980).

As it now stands, the record provides "persuasive proof," in the form of highly consistent opinions from four experts, that Garcia satisfied the criteria of Listing 12.04. The only question, therefore, is whether yet another remand for further proceedings would serve any purpose.

There is an argument to be made that remand for further proceedings would allow the ALJ to address Dr. Goldstein's defense of his methodology and the new opinions of Drs. Florentino and Eshkenazi. A remand with such instructions would only be useful, however, if it were likely that the ALJ could muster sufficient evidence to refute all four opinions. The ALJ has already had one opportunity to elicit evidence challenging at least the opinions of Drs. Antollelli and Goldstein, and came up wanting; that the ALJ could persuasively discredit all four opinions is, *a fortiori*, even more unlikely. Thus, the Court concludes that the only purpose that would be served by another remand for further

proceedings would be to add months, or perhaps years, to the 10 years Garcia's claim has been pending. Accordingly, remand solely for a calculation of benefits is warranted and, as an added virtue, will serve a quietus to this already too protracted litigation.

In sum, Garcia has provided persuasive proof that he met the criteria of Listing 12.04 before his date last insured. Since he applied for DIB on January 21, 1997, he is entitled to benefits as of January 21, 1996. *See, e.g., Howard v. Barnhart*, 2006 WL 305464, at *2 (S.D.N.Y. Feb. 7, 2006) ("[T]he earliest date on which a claimant can be entitled to disability insurance benefits is one year prior to the date of her application." (citing 42 U.S.C. § 423(b))).[3]

### III.

The Commissioner's motion is denied, and Garcia's motion is granted. The case is remanded to the Commissioner to calculate benefits as of January 21, 1996.

**SO ORDERED.**

/signed/
_____
FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
August 2, 2007

---

[3]Garcia argues that Dr. Locuratolo's testimony suggests that he may have filed an earlier application for benefits; however, he has not attested that he filed such an application, something that is clearly within his personal knowledge. Thus, the Court declines Garcia's invitation to speculate about an earlier application date.

14